**SIGNED THIS: September 19, 2019**

_____
**Mary P. Gorman
United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 18-71772 |
| MICHAEL K. LUSHER and ) | |
| MARY A. LUSHER, ) | |
| ) | Chapter 7 |
| Debtors. ) | |

## O P I N I O N

Before the Court is a motion to reopen the Debtors' closed Chapter 7 case filed by the Chapter 7 Trustee. For the reasons set forth herein, the motion will be denied.

### I. Factual and Procedural Background

Michael K. Lusher and Mary A. Lusher ("Debtors") filed their voluntary Chapter 7 petition on December 6, 2018. On their Schedule A/B: Property, the Debtors disclosed a "[p]ossible inheritance from Debtor's brother passing" that

they described as having an unknown value. The Debtors claimed as exempt up to $3573 of the possible inheritance, an amount representing the otherwise unused portion of their Illinois wild card exemption. The Debtors also scheduled $92,812 in nonpriority, unsecured debt and no secured debt.

The Debtors' meeting of creditors was held on January 14, 2019, and a week later, Jeffrey D. Richardson, the Chapter 7 trustee ("Trustee"), filed his Report of No Distribution. The Report stated that he had "made a diligent inquiry into the financial affairs of the debtor(s) and . . . that there is no property available for distribution from the estate over and above that exempted by law." The Report also included the Trustee's certification that the estate had been fully administered. An order discharging the Debtors was subsequently entered, and, on April 5, 2019, the Debtors' bankruptcy case was closed.

Two months later, on June 19, 2019, the Trustee filed his Motion to Reopen Case with Deferred Filing Fee ("Motion to Reopen"). In it, the Trustee asserted that Michael Lusher's brother died prior to the Debtors' bankruptcy filing, leaving an estate of approximately $150,000. He acknowledged that the Debtors had disclosed a "possible inheritance from Debtor's brother passing" of an "unknown" amount on their schedules but claimed that the Debtors "provided no further information" until they recently disclosed that Michael Lusher "was appointed the independent administrator of his brother's estate prior to the first meeting of creditors and the [sic] filed papers with the court indicating the estate consisted of $86,000.00 in real estate and approximately $5,000.00 in personal property." The Trustee further alleged that Mr. Lusher was named as one of two beneficiaries—the other being his sister—to a 401(k) account owned by his brother

in the amount of $50,000. The Trustee asked that the Debtors' case be reopened so that he might investigate further and potentially administer those assets.

At a hearing on the Motion to Reopen, the Trustee expressed concerns about the completeness of the Debtors' disclosures on their schedules. The Trustee admitted, however, that he had specifically made a note to ask the Debtors about the inheritance at the creditors meeting but that, because the Debtors were late to the meeting and he took their case out of order, the matter slipped his mind. The Trustee acknowledged that he was "not particularly pleased with [him]self." He expressed frustration at having conducted the Debtors' meeting in a hurry when he had already packed up his briefcase but candidly acknowledged that the issue of the inheritance "was in [his] notes." Nevertheless, he argued that he should be able to reopen the case and administer the inheritance for the benefit of the Debtors' creditors.

The Trustee said that he recalled asking a standard question about inheritances at the meeting and that the Debtors had responded that they understood their duty to disclose but said nothing else. As the Trustee saw it, the Debtors should have spoken up at the meeting and volunteered more information regarding the inheritance. According to the Trustee, Mr. Lusher's brother's estate consisted of inventoried assets and the value of the estate was readily available at the time of the first meeting—if not sooner.

The Debtors' attorney objected to the case reopening, arguing that the inheritance had been disclosed and was abandoned when the case closed. The Court noted that its initial reaction was that there had been enough disclosed by the Debtors in their schedules to cause the Trustee to investigate the potential

asset while the case was open and that fact would preclude reopening. But the Court also stated that it wanted to be sure it had all information before making a decision on the matter and set a briefing schedule for both the Trustee and the Debtors to provide additional information and authority to the Court.

On July 30, 2019, the Trustee filed his Memorandum of Law in support of his Motion to Reopen. Included as an exhibit was an Affidavit in Support of Memorandum of Law on Trustee's Motion to Reopen ("Affidavit"), setting forth the Trustee's version of the facts. According to the Affidavit, the Trustee makes a statement to debtors at every creditors meeting that "generally explains that inheritances, including inheritances which a debtor has not yet received, are assets of the bankruptcy estate and that applies to persons who may be alive at the time the bankruptcy is filed, but die within 180 days after the bankruptcy was filed, creating a right to inheritance." He then asks debtors in each case whether they understood his explanation about inheritances.

The Trustee included an unofficial transcript of the meeting prepared by his office that showed that he asked the Debtors several, direct questions about whether they had an interest in specific types of assets, but he did not specifically ask them if they were then entitled to an inheritance of any type. The Trustee did ask the Debtors whether either of them had inherited an individual retirement account but then asked—before an answer as to inherited retirement accounts was provided—whether either Debtor had a health savings account. Both of the Debtors responded in the negative. The Trustee also asked the Debtors if they "hear[d] when [he] explained the circumstances under which an inheritance [they] might be entitled to in the future gets pulled back into [their] bankruptcy[,]" to

which the Debtors responded that they did so hear. The Affidavit goes on to state that the Trustee made no further inquiries into the possibility of an inheritance and filed his Report of No Distribution. On May 22, 2019, the Trustee received an email from the Debtors' attorney's office informing him that Mr. Lusher was expecting to receive $80,000 from his brother's estate. In a letter dated June 11, 2019, the Debtors' attorney's office provided further detail to the Trustee, explaining that Mr. Lusher's brother died intestate and was owner of "a home worth around $70,000 and had a 401K valued at around $50,000, which [would] be split with Debtor's sister."

Before the Trustee filed his Motion to Reopen, he learned the identity of the Debtor's brother and began an investigation into the probate proceedings. The Trustee discovered that there was an open probate case in Tazewell County, Illinois.[1] The Trustee subsequently obtained copies of the following documents, which were attached as exhibits to his Memorandum of Law: (a) Petition for Letters of Administration, signed by the Debtor January 9, 2019, and filed January 11, 2019, seeking the appointment of the Debtor as administrator of his brother's estate approximately valued at $91,000; (b) an Affidavit of Heirship signed by the Debtor on January 9, 2019; (c) an Order Finding Heirship dated January 14, 2019; (d) an order entered January 14, 2019, appointing the Debtor as administrator of his brother's estate; (e) an Oath of Office sworn to by the

---

[1] The Trustee complains that he searched the records in McClean County first because the Debtors live there. Only after finding no probate proceeding in McClean County did he run an online search and find that the proceeding was in Tazewell County. The Trustee did not explain why he did not contact the Debtors' attorney, who had twice provided information about the inheritance voluntarily, and ask for the additional information he wanted.

Debtor on January 9, 2019; (f) the Bond of the Debtor as Administrator for $182,000 dated January 9, 2019; and (g) Letters of Office issued to the Debtor as administrator on January 24, 2019. The Trustee noted in his Affidavit that the Debtors' bankruptcy schedules were never amended to disclose any of the information contained in the probate documents.

The Debtors filed their own Memorandum of Law in Reply to Trustee's Motion to Reopen. In it, the Debtors do not dispute that this Court has the authority to reopen the Debtors' case and that reopening their case to distribute the non-exempt portion of Mr. Lusher's inheritance would undoubtedly benefit the Debtors' unsecured creditors. Nevertheless, the Debtors argue against reopening the case because they disclosed the "possible inheritance" from the outset and because the Trustee had a full opportunity to investigate but made no meaningful inquiry before filing his Report of No Distribution that resulted in the abandonment of the inheritance when the case closed. The Debtors argue that they complied with their duties to disclose assets and cooperate with the Trustee's investigation into their assets and that it was the Trustee who failed in his duties and let the case close without fully investigating the disclosed potential inheritance.

Following the briefing schedule, the Court took the matter under advisement. Having considered the arguments of the parties, the matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C.

§1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Determinations of whether to reopen bankruptcy cases are core proceedings. 28 U.S.C. §157(b)(2)(A), (O). This matter arises from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

Section 350(a) of the Code provides that, after an estate has been fully administered and the debtor has been discharged, "the Court shall close the case." 11 U.S.C. §350(a). Section 554(c), in turn, provides that "any property scheduled . . . [but] not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350[.]" 11 U.S.C. §554(c). This is known as "technical abandonment" of property of the estate. *Helms v. Arboleda (In re Arboleda)*, 224 B.R. 640, 645 (Bankr. N.D. Ill. 1998) (citation omitted). And there is a presumption that the estate has been fully administered in cases where "the trustee has filed a final report and final account and has certified that the estate has been fully administered[.]" Fed. R. Bankr. P. 5009(a).

Section 350(b) allows for the reopening of a bankruptcy case "to administer assets, accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). Whether to reopen a case, however, is within the bankruptcy court's broad discretion. *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). Despite broad authority, courts have

recognized that "[i]n order to reopen a case under §350(b) and Federal Rule of Bankruptcy Procedure 5010 to administer assets, the assets must not be known at the time the case was closed." *Arboleda*, 224 B.R. at 644-45 (citation omitted). This is consistent with the presumption that a case in which the trustee has filed a final report and that has closed has been fully administered. In other words, while this Court has discretion to reopen the Debtors' case, the ultimate issue is whether the Trustee can accomplish what he seeks through reopening the case, which is to withdraw or revoke his final report and bring the abandoned inheritance back into the bankruptcy estate to be administered.[2] Indeed, the Trustee acknowledges that "abandonment is revocable only in very limited circumstances, such as where the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) (quoting *Catalano v. Commissioner*, 279 F.3d 682, 686 (9th Cir. 2002)) (internal quotation marks omitted).

Both parties cite the five-factor test discussed in *Arboleda* as the appropriate standard for determining whether the circumstances here warrant reopening. The factors to be considered include: "(1) whether denial of the motion would result in an injustice to creditors; (2) whether the trustee was initially afforded the ability to make an informed decision with respect to administering the asset; (3) whether the debtor substantially improved the abandoned property; (4)

---

[2] This Court has previously held that a Chapter 7 trustee who has been discharged from his or her duties is a party in interest as described in Federal Rule of Bankruptcy Procedure 5010 and has standing to seek the reopening of a closed case. *In re Trahan*, 460 B.R. 207, 210 (Bankr. C.D. Ill. 2011). The Trustee's standing has not been challenged here, and the issue need not be further discussed.

whether the failure to properly administer the property was the trustee's fault; and (5) whether significant time has passed since the trustee abandoned the property." *Arboleda*, 224 B.R. at 645. Although not exclusive, consideration of the *Arboleda* factors is helpful in deciding the issues here.

The Trustee says that denial of his motion would result in injustice to creditors and, to some extent, that is true. But that factor would have to be present for a court to even consider a case reopening to administer assets. If there was no injustice or adverse effect on creditors in denying a reopening—perhaps because creditors had already been paid in full or the assets sought to be administered had only minimal value—then reopening would surely be denied. Thus, the Court considers this factor as necessary for the Trustee to establish but not controlling as to the ultimate decision on reopening.

Because of the nature of the asset here, the factor involving whether the Debtors have improved the asset does not apply. Likewise, the Court does not find the issue of whether significant time has passed to be particularly relevant here. The Trustee claims that, because the case was closed for only a few months, the Debtors will not be damaged by a reopening. But the Debtors disagree. Once the abandonment occurred, the Debtors had a right to rely on the Trustee's action and any passage of time could be considered significant. The time factor is, at best for the Trustee, a neutral factor here.

The other two factors—whether the Trustee was afforded the ability to make an informed decision about the asset when the case was open and whether the failure to properly administer the case was the Trustee's fault—are key to the decision here. Both factors weigh heavily against the Trustee.

The Trustee had the ability to make an informed decision at the time of the creditors meeting about whether to keep the case open and administer the asset. The Debtors had disclosed a potential inheritance; the Trustee could have asked them about the inheritance at the meeting and kept the case open for as long as it took to get the information he wanted. The Trustee regularly and effectively pursues assets, issuing process to compel both debtors and reluctant witnesses to cooperate. The Trustee is experienced and knows how to get the information he needs even if the circumstances are challenging and the other parties are difficult. At the initial hearing on his request to reopen, the Trustee candidly admitted that, in the haste of conducting the creditors meeting in this case, he failed to consult his own notes and the issue of the inheritance, which he had clearly flagged based on the Debtors' disclosure, "slipped" his mind. He filed his Report of No Distribution a few days later and never looked back. And, although he now complains that the Debtors could have volunteered more at the meeting, his own transcript suggests that the Debtors answered the questions he asked truthfully. He asked them only if they heard his admonishment about inheritances not whether they had more to say about the inheritance they had already disclosed. The Court cannot and will not assume that the Debtors would have lied if asked directly about the inheritance.

The Trustee is solely at fault for the inheritance not being administered and the case being closed, resulting in the inheritance being abandoned. He admits he was on notice to inquire and he failed to inquire. Nothing the Debtors did or said precluded him from doing his job. Again, when property has been scheduled accurately, it is normally the Trustee's duty to investigate and decide how to deal

with assets before a case is closed. *Russell v. Tadlock (In re Tadlock)*, 338 B.R. 436, at 439 (10th Cir. BAP 2006) (citing 5 *Collier on Bankruptcy* ¶ 554.02[7], at 554-11 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev. 2002)).

The Trustee has cited cases where other courts have parsed whether disclosures were sufficient to fully inform a trustee of the asset being disclosed. *See, e.g., Lujano v. Town of Cicero*, 2012 WL 4499326, at *6-8 (N.D. Ill. Sept. 28, 2012). It is, of course, true that a disclosure must be sufficient to put a trustee on notice of the asset being disclosed, and trustees are not required to undertake extensive investigations based solely on vague hints or suspicions. But here, the Trustee had a clear disclosure: Mr. Lusher's brother had died and an inheritance might be forthcoming. This was not a hint or a vague reference. The Trustee could have asked the Debtors the name of the deceased, the deceased's date of death, whether an estate had been opened, whether any additional information was available about the assets of the estate, whether there were other heirs to share in the estate, who the attorney for the estate was, and anything else he might have wanted to know. Because the Debtors later provided some of this information voluntarily, even though their bankruptcy case was closed, this Court cannot presume that they would not have answered the Trustee's questions, if asked, to the best of their ability. But the Trustee simply did not ask any of the questions, and the failure to do so was his alone.

At the hearing, the Trustee tried to parse the Debtors' disclosure, suggesting that assets actually passing through the probate proceeding might be covered by the disclosure of the inheritance but that the 401(k) account, which passed through a beneficiary designation, would not be an inheritance and was therefore

not disclosed. But when asked whether, if the case was reopened, he would object to the Debtors' claim of exemption in the 401(k) as a retirement account because it was "inherited," the Trustee admitted that he would. *See Clark v. Rameker*, 573 U.S. 122, 128-29 (2014) (inherited IRA not exempt); *In re Smith*, 2018 WL 494415, at *4 (Bankr. C.D. Ill. Jan. 19, 2018) (inherited IRA not exempt under Illinois exemptions). The Trustee's argument that the case should be reopened to administer the Debtors' receipt of the 401(k) account because the account did not pass through a probate proceeding and was not inherited, in the strictest sense of the word, but that the account cannot be claimed as exempt because it was inherited, in the broadest sense of the word, cannot be sustained. The use of the word "inheritance" on the Debtors' schedules was clearly used in a broad, generic sense and encompassed all property that the Debtors might receive due to the death of Mr. Lusher's brother.

The Debtors disclosed the inheritance, and it was abandoned when the case was closed. The case should not be reopened to administer the abandoned asset.

### IV. Conclusion

Ultimately, the burden was on the Trustee to justify reopening the Debtors' case to administer an asset that was scheduled by the Debtors and eventually abandoned by the Trustee through the filing of his Report of No Distribution and the closing of the case. It was a burden that the Trustee was unable to meet. The Debtors disclosed enough regarding the potential inheritance to give the Trustee an opportunity to make an informed decision about how to deal with the asset, whether that be a decision to investigate further, administer, or abandon.

Mistakes happen, and the Trustee surely should have done things differently here. The Trustee has admitted as much. Under the circumstances, reopening the case is not appropriate, and the Trustee's request to reopen must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###